**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NDUBUISI MBANO,

Plaintiff,

v. Case No: 8:14-cv-1923-T-30TBM

RICK KRISEMAN, WILLIAM J. HUBBARD, RANDALL MORTON and GARY DUKEMAN,

Defendants.

---

**ORDER**

THIS CAUSE comes before the Court upon the Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #4). This Court entered an Order to Show Cause as to why the Court should not consider Defendant's Motion without a response from Plaintiff (Dkt. #12). The Plaintiff did not file a response to the Motion or the Order to Show Cause. Upon review and consideration, it is the Court's conclusion that the Motion should be granted in part and denied in part.

Plaintiff, Ndubuisi Mbano, files this Amended Complaint, *pro se*, alleging several causes of action for violation of his civil rights against Defendants Mayor Rick Kriseman, Officer William J. Hubbard, Lieutenant Gary Dukeman, and Sergeant Randall Morton, in their official capacities as employees of the City of St. Petersburg, Florida (the "City") and the City of St. Petersburg Police Department ("SPPD"). Plaintiff originally filed the complaint in state court in Pinellas County. Defendants removed the case to this Court

based on Plaintiff's allegations of violations of his constitutional rights under Title 42, § 1983, United States Code. Defendants move to dismiss the Amended Complaint in its entirety.

The Amended Complaint states that Mbano is a homeless individual who resided at a homeless shelter when he first encountered Officer Hubbard. Residents of the shelter vacate the premises at 6:15 every morning and regularly congregate in front of the shelter. Officer Hubbard regularly patrols the area in front of the homeless shelter in the mornings. Mbano thoroughly describes his encounters with Officer Hubbard over a series of several days. He states that Officer Hubbard approached him while walking down the street one morning with his bicycle and was ordered to get off the streets. Mbano responded that the officer had no reason to make this order to him, after which Officer Hubbard detained him unlawfully and made several threats. Mbano went to the SPPD and made a formal complaint regarding Officer Hubbard's behavior. An unnamed officer took the complaint on a pad of paper. Mbano received an e-mail from Sgt. Morton requesting a meeting the next day regarding the complaint.

The next day Officer Hubbard detained Mbano in front of the shelter and called him a "crazy mental patient" who was "off his meds." He also referenced Mbano's complaint the previous day indicating that he was filing a false police report and lying to the police which were both against the law. Later that day, Officer Hubbard detained Mbano at a bus stop, searched him, and arrested him for disorderly conduct. In his report, Officer Hubbard notes that Mbano made several verbal threats, was uncooperative and tense and used profanity. Mbano states that Officer Hubbard made several comments, specifically

to “enrage and psychologically torture” him including “stop resisting” and “I will just say you are resisting arrest, then you will see what a real beating feels like.” While in jail, Mbano witnessed acts he considers horrific and violent in nature which were detrimental to his mental capacity. He remained in jail for ten days, and was released without any formal charges. He could not return to the homeless shelter because he received a “trespass warning.”

Mbano requested that the SPPD internal affairs department investigate the incident. Mbano states that the report indicates that the investigation started on June 2, 2014, which was almost two months after the initial complaint. Lt. Dukeman wrote the report and stated that although Officer Hubbard called Mbano “crazy,” he made no bad comments. The report concludes that Mbano’s comments to Officer Hubbard were “clearly a basis for his arrest for disorderly conduct.” Mbano alleges that he suffered mental, emotional, physical and psychological harm. The record of his arrest in the public records and the internet will cause him continual harm and he lost his personal belongings at the shelter including luggage, clothes, books, personal care items, and original forms of identification due to his extended absence.

Mbano alleges seven causes of action against the Defendants: false detention, battery, gross negligence, negligent infliction of emotional distress, illegal seizure pursuant to 42 U.S.C. § 1983, excessive force pursuant to 42 U.S.C. § 1983, and violation of free speech pursuant to 42 U.S.C. § 1983.

## I. Motion to Dismiss Standard

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank*, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (internal citations and quotations omitted). "A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Further, exhibits are part of a pleading "for all purposes." Fed.R.Civ.P. 10(c)*; see Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.").

Although the Court may hold a *pro se* litigant to "a less stringent standard," the *pro se* litigant may not rely on conclusory allegations or legal conclusions in the place of factual

allegations to overcome a motion to dismiss. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Conclusory allegations will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief. *Municipal Utilities Bd. of Albertville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir. 1991). A *pro se* litigant is still bound to follow the pleading requirements set forth in the Federal Rules of Civil Procedure. *See Goldsmith v. City of Atmore*, 996 F. 2d 1155, 1161 (11th Cir. 1993).

On a motion to dismiss, the Court may consider matters judicially noticed. *La Grasta v. First Union Sec. Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). These matters include documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *SFM Holdings. Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

**II. Defendants' Motion to Dismiss**

Defendants move to dismiss Plaintiff's claims arguing that Plaintiff fails to state a cause of action upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); the complaint is a shotgun pleading; and the claims against the individuals "in their official capacities" lack the proper allegations regarding custom or policy, and the claims are barred by Section 768.28, Florida Statutes.

**a. Improper Parties**

The Amended Complaint alleges causes of action against the individuals in their official capacities as employees of the City. An official capacity claim against a law enforcement officer, or other government official, is functionally a claim against the local government entity he represents. *See Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1210 n. 3 (11th Cir.1993); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). The Court therefore construes the allegations as being against the City for purposes of evaluating the remainder of Defendants' bases for dismissing the Amended Complaint.

**b. Pleading Standard**

The City argues that the Amended Complaint is a shotgun pleading because it asserts seven different counts with varying legal requirements. All of the counts reference and incorporate the first 134 paragraphs of the Amended Complaint without distinguishing which counts relate to which facts. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983 (11th Cir. 2008) (describing shotgun pleadings and explaining the many unacceptable consequences of them.) However, in this Amended Complaint the first 134 paragraphs state the events, in chronological order, leading up to Mbano's detention, arrest and incarceration, all of which he asserts support all of his claims. Unlike the pleadings in *Davis* where AV-rated experienced attorneys deliberately filed shotgun pleadings as a litigation strategy, 516 F.3d at 983; Mbano is a *pro se* litigant attempting to state a cause of action for what he perceives as constitutional violations by the City. Since the Court holds a *pro se* plaintiff to a less stringent standard, and the Amended Complaint sufficiently

apprises the Defendant of the claims to which it should respond, the Court will not dismiss the claims on this basis.

### III. State Law Claims

Generally, Florida law permits a plaintiff to recover against a municipality for the tortious acts of its employees based upon a theory of vicarious liability. *Laster v. City of Tampa Police Dept.*, 575 Fed. App'x. 869, 872 (11th Cir. 2014) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 n. 18 (11th Cir. 1988); Fla. Stat. § 768.28). To prevail on a theory of vicarious liability against the City under Section 768.28, Florida Statutes Mbano has to show liability on the part of the City's employee. *Laster*, 575 Fed. App'x. at 873. However, a municipality cannot be held liable for an employee's acts or omissions committed in bad faith or with a malicious purpose or that are wanton and willful. 768.28(9)(a). *See also Petithomme v. County of Miami Dade*, 11-20525-CIV, 2011 WL 3648622 (S.D. Fla. Aug. 16, 2011) *aff'd sub nom. Petithomme v. County of Miami-Dade*, 511 Fed. App'x. 966 (11th Cir. 2013).

#### i. Count I - False Detention

Mbano does not clarify whether he alleges this count as a state or federal cause of action. The City asserts in its Motion to Dismiss that it is a federal cause of action. However the language in this count does not indicate that Mbano pursues this claim under federal law.[1] Further, Mbano brings an illegal seizure claim under Section 1983, which would

[1] Mbano demands attorney's fees pursuant to 42 U.S.C. § 1988 in all of the counts, therefore the Court will not consider the request as an indication that Count I is pursued under federal law.

deem this claim duplicative. Therefore, the Court will construe this count as a state law claim for false arrest against the City.

The essential elements of a cause of action for false arrest include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or “color of authority”; and (4) which is unreasonable and unwarranted under the circumstances. *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010). *See also City of Hialeah v. Rehm*, 455 So. 2d 458, 461 (Fla. 3d DCA 1984) (citing *Johnson v. City of Pompano Beach*, 406 So. 2d 1257 (Fla. 4th DCA 1981)). “[A] police officer does not have the discretionary authority to arrest a citizen whom the officer does not have probable cause to believe has committed an offense.” *Lester v. City of Tavares*, 603 So. 2d 18 (Fla. 5th DCA 1992). “[T]here is a body of law in Florida recognizing liability for false arrest by a law enforcement officer.” *Id*. (citing *LeGrand v. Dean*, 564 So. 2d 510 (Fla. 5th DCA 1990), *rev. denied*, 576 So. 2d 288 (Fla. 1991)). There is no sovereign immunity for false arrest. *Id*. at 19; *see also Moore v. Seminole Cnty., Fla*., No. 6:13-CV-224-ORL-31GJ, 2014 WL 4278744, at *6 n. 7 (M.D. Fla. Aug. 29, 2014) (noting in dicta that plaintiff would have had a viable false arrest claim against the county that would not be barred under Fla. Stat. § 768.28(9)).

The Court, reading the allegations in the light most favorable to Mbano, concludes that he sufficiently states a false arrest claim against the City. He alleges that Officer Hubbard, while acting within the scope of his employment, detained and arrested him against his will and without probable cause.

**ii. Count II - Battery**

Battery is an ordinary incident of an arrest, which does not give rise to an independent tort. *Lester*, 603 So. 2d 18. If the tort of false arrest was committed, the act is simply evaluated in calculating damages. *Id. See also Borges v. City of W. Palm Beach*, 93-8373-CIV-RYSKAMP, 1994 WL 397301 (S.D. Fla. June 7, 1994) (dismissing battery count since it was "incident to the arrest" and plaintiff alleged a false arrest claim). The Court concludes that the battery claim should be dismissed.

**iii. Count III - Gross Negligence**

Mbano alleges that the City breached its duty of care owed to him in its failure to train and supervise Officer Hubbard regarding lawful detention and arrest. In order to bring a failure to train cause of action, Plaintiff must allege a pattern of improper training, and he must show that the City was aware of the deficiencies in the program. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir. 2007). The allegations do not contain any facts to support a failure to train cause of action. Therefore, the Court concludes that the gross negligence claim should be dismissed.

**iv. Count IV - Negligent Infliction of Emotional Distress**

Mbano bases this claim on Lt. Dukeman's failure to properly investigate his complaint against Officer Hubbard, and his failure to properly train and supervise Officer Hubbard. He alleges that this failure was the direct cause of the violation of his constitutional rights and Officer Hubbard's threatening, stalking, and harassing behavior.

The elements of a negligent infliction of emotional distress claim are: (1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused

by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person. *Fernander v. Bonis*, 947 So. 2d 584, 590 (Fla. 4th DCA 2007). Mbano's claim fails because he has not alleged any physical injury to himself, and a plaintiff "must demonstrate that the emotional stress suffered flowed from injuries sustained in an impact." *Id*. (quoting *Hagan v. Coca-Cola Bottling Co*., 804 So. 2d 1234, 1237 (Fla. 2001). Therefore, the Court concludes that the negligent infliction of emotional distress claim should be dismissed. *See id*. (upholding dismissal of plaintiff's negligent infliction of emotional distress claim against city stemming from his arrest because he did not allege physical injury or any facts supporting an exception to the impact rule).

**IV. Section 1983 Claims**

Although Florida state law allows for an entity such as the City to be held vicariously liable for the torts of its employees, this rule does not apply to federal constitutional claims asserted under 42 U.S.C. § 1983. Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law. *Id*. Municipalities and other local-government units are included among the "persons" to whom Section 1983 applies. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a claim under Section 1983 against a municipality, a Plaintiff must allege that the constitutional injury is caused by the execution of a government entity's official custom or policy. *Id*. at 694. But a municipal employer is not vicariously liable under Section 1983 for injuries caused solely by its employees. *Id*. at 691–94; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A plaintiff can only impose Section 1983 liability on a municipality if the plaintiff can show (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that right, and (3) that the policy or custom caused the constitutional violation. *McDowell*, 392 F.3d at 1289.

Mbano alleges that the SPPD Downtown Task Force (DTT) carelessly and negligently arrest, detain and incarcerate individuals to excuse its use of excessive force and violence against otherwise nonviolent individuals committing nonviolent acts. In particular, through its conduct and practices, the SPPD DTT harasses and intimidates the poor, homeless and other members of the "City's underclass" with the intent of depriving these citizens of equal protection of the laws and enjoyment as the privileges and immunities afforded to citizens of the United States.

Mbano further states that a common practice of the SPPD DTT is to "instigate peaceful citizens into acts of aggression or disruption which can justify the use of physical and violent police-force." Another allegedly common practice is for officers to utter "stop resisting" which an officer says when he is "contemplating committing a physical assault of a detained person" and he needs to "build[] [a] case for probable cause which will be entered as evidence into a police report to falsely justify the abuse." Two other practices described by Mbano are for the SPPD DTT to "manipulate official monitoring or recording devices such as cameras, radio communication, police reports, arrest records and booking records" as well as inflating, exaggerating and otherwise falsifying police reports.

These allegations, taken in the light most favorable to Mbano, state sufficient facts to allege that the SPPD DTT has a custom or policy of targeting homeless individuals for

detention and arrest by engaging them in aggressive behavior as a pretense to detain them without probable cause and otherwise creating circumstances through exaggerated or false allegations to remove them from the streets and jail them. Therefore, Mbano has met the *Monell* standard for the first prong of pleading a Section 1983 claim against a local government entity. However, Mbano must allege sufficient facts to demonstrate that the officers violated a constitutional right and that the custom or policy caused the constitutional violation in order to sustain his claims against the City.

**a. Count V - Illegal Seizure**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ..." U.S. Const. amend. IV. "An arrest is quintessentially a seizure of a person, and therefore subject to the Fourth Amendment's reasonableness requirement." *McClish v. Nugent,* 483 F.3d 1231, 1238 (11th Cir. 2007). "[A]n arrest conducted in a public place must be supported by probable cause, but it does not require a warrant." *Id.*

In addition to the allegations previously recited, Mbano alleges that Officer Hubbard had no probable cause to detain him and therefore had no legal right to detain and arrest him. Further, he alleges that Officer Hubbard took these actions with knowledge that they clearly violated Mbano's established constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. Therefore, Mbano has sufficiently stated a constitutional violation. Mbano's allegations are sufficient to state a cause of action for an unreasonable search and seizure based on the SPPD DTT's alleged custom or policy of targeting homeless individuals for removal from the streets of downtown St. Petersburg.

**b. Count VI- Excessive Force**

The Supreme Court has instructed that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386. 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In addition, "the Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. As a result, "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citation and internal quotation marks omitted). *See, e.g.*, *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (in the course of arrest, the officer handcuffed plaintiff in a manner that caused him injury and pain); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 & n. 4 (11th Cir. 2000) (during the course of arrest for engaging in a street fight, the officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him).

However, the Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying

commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (citing *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 927 (11th Cir. 2000); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002)).

In *Lee*, a police officer arrested a driver for improperly honking her horn. After he handcuffed the driver, the officer slammed her head against the trunk of her car. The court ruled that the actions violated the Fourth Amendment because it was "plainly excessive, wholly unnecessary, and indeed, grossly disproportionate[,]" as there was no evidence that the driver posed any threat to the officer or to anyone else. 284 F.3d at 1198.

Mbano alleges that the SPPD DTT has "[a] common practice … to [] instigate peaceful citizens into acts of aggression or disruption which can justify the use of physical and violent police-force." He alleges that Officer Hubbard made threats of force and used excessive force when he grabbed Mbano "from his sitting position on the bus stop bench" and forced him "face –first onto the hot hood of the still-running awaiting police cruiser" without provocation or verbal warning. He also alleges that at no time did Officer Hubbard attempt to use "other less hostile and aggressive means of enforcement."

Mbano's allegations are sufficient to state a claim for excessive force against the City since he alleges it was part of the DTT's common practice to use this level of force in making false arrests and to justify charges of disorderly conduct, that he did nothing to provoke the officer, and was not engaging in any illegal act or conduct. These allegations, read in the light most favorable to Mbano, infer that he did not resist or pose any threat to the officer or anyone else. Although he was not handcuffed, there is no indication in the

Amended Complaint that Mbano was not "under control" at the time of the arrest or that he was disobeying any of the officer's commands.

**c. Count VII - Free Speech**

Mbano further alleges that two incidents violated his right to free speech: (1) Officer Hubbard detained and arrested him as retaliation for Mbano's complaint filed the day prior and (2) his utterances, which Officer Hubbard used as a basis for his arrest, were protected free speech. He alleges that by arresting him as a result of making those statements, Officer Hubbard and Lt. Dukeman violated his freedom of speech and expression. The Amended Complaint notes that Officer Hubbard's arrest affidavit includes the words "fuck", "pussy," "cracker," and "motherfucker," repeatedly and states that Mr. Mbano made numerous threats including "im [sic] going to kick your pussy ass." It is unclear as to which utterances Mbano actually made, since he states that such utterances "whether factual or not, are a protected action, expression and right, and thus, said utterances are freedoms of expression, which are protected by the First Amendment…."

The Court will construe this count as one for a First Amendment retaliation claim. To state a First Amendment retaliation claim under Section 1983, a plaintiff must establish the following: (1) his speech or conduct was constitutionally protected; (2) the retaliatory conduct of the defendant adversely affected the protected speech, in that the retaliation "would likely deter a person of ordinary firmness" from engaging in the protected speech; and (3) there is a causal connection between the retaliatory conduct and the protected speech. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005). The causal-connection inquiry asks whether the

defendant was subjectively motivated to retaliate because the plaintiff engaged in protected speech. *O'Bryant*, 637 F.3d at 1217.

To sustain this claim against the City for the acts of Officer Hubbard and Lt. Dukeman, Mbano must allege that the officer's action of arresting him in retaliation for exercising his constitutionally protected speech was part of a custom or policy of the SPPD. Mbano fails to do so. Therefore, the Court concludes that this free speech claim should be dismissed.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #4) is GRANTED in part and DENIED in part.

2. The Court dismisses Count II, III, IV, and VII.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of November, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-1923 mtd 4.docx