**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NDUBUISI MBANO,

      Plaintiff,

v.                                                                  Case No: 8:14-cv-1923-T-30TBM

CITY OF ST. PETERSBURG,

      Defendant.

_____

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Dkt. 33) and Plaintiff's Response (Dkt. 35), which, per Plaintiff's request (Dkt. 37), the Court also construes as a Motion for Summary Judgment. The Court has reviewed the pleadings, evidence, and applicable law. The Court concludes that the evidence, viewed in the light most favorable to Plaintiff, demonstrates that Defendant's motion for summary judgment should be granted.

## FACTUAL BACKGROUND

Plaintiff Mbano alleges that the City of St. Petersburg, through the actions of a city police officer, unlawfully arrested him and used excessive force in doing so. Mbano is a homeless man who lives in St. Petersburg, Florida. Like other homeless people in the city, Mbano spends time in and around a homeless shelter operated by the Society of St. Vincent DePaul, a charitable organization. (Dkt. 33, p. 2).

Defendant Hubbard is a St. Petersburg police officer assigned to a team responsible for the downtown portion of the city. (Hubbard Aff. ¶¶ 4-5, Dkt. 33-1, pp. 1-2). Every day in which he is on patrol, Hubbard conducts a morning check of the area around St. Vincent DePaul. (Id. at 2; Police Internal Affairs Inv., p. 1, Dkt. 35-3, p. 1).

The facts giving rise to this lawsuit occurred during two of Hubbard's morning patrols—April 17 and 18, 2014. And the relevant details are contained in two pieces of evidence filed with the Court: (1) a Hubbard affidavit, which Defendant submitted in support of its motion for summary judgment; and (2) a police internal affairs investigative report, which Mbano submitted in support of his opposing motion. (Dkt. 33-1; Dkt. 35-3). These documents capture the following narrative of events.

On the morning of April 17, 2014, Hubbard encountered Mbano and several other people sleeping on the sidewalk outside St. Vincent DePaul. (Dkt. 33-1, p. 2; Dkt. 35-3, p. 1). Mbano also had his bicycle with him on the sidewalk. Hubbard instructed Mbano and the others that they were blocking the sidewalk, in violation of a city ordinance, and would have to move. After some verbal protest, the exact degree and tone of which the parties dispute, Mbano moved to a nearby bus stop, and Hubbard continued on his patrol.

The next morning, April 18, Hubbard and Mbano had another encounter. Again on his morning check of St. Vincent DePaul, Hubbard found Mbano and others congregating on the steps outside the facility, presumably waiting until it opened at 11:00 a.m. Hubbard recalled that, in the past, St. Vincent DePaul staff members had asked for police assistance to help keep the building's doorway and front stairs clear of people. So Hubbard contacted two St. Vincent DePaul employees, James Harris and Paul Hunt, to inquire about the

congregation on the front steps. Harris and Hunt confirmed that they usually prefer the steps clear, and they asked for Hubbard's help in clearing them on that morning.

Hubbard, with Hunt beside him, stood outside the front door of the facility and instructed the people that they should not loiter. They began to disperse. But Mbano, in front of approximately thirty people, protested vociferously—and profanely. (Dkt. 33-1, p. 3).

According to Hubbard, Mbano yelled the following remarks: "your momma should be real fucking proud of you," "fuck you cracker motherfucker," and "you don't intimidate me, you pussy motherfucker." (Dkt. 33-1, pp. 3-4). Eyewitness accounts contained in the police internal affairs report, which Mbano filed with the Court, corroborate Hubbard's account. St. Vincent DePaul employee Hunt told the investigator that Mbano was "disorderly, cussing, screaming, and yelling at Officer Hubbard." (Dkt. 35-3, p. 2). Backup officers Feeley and Miranda agreed. (Id.). All of these witnesses told a police investigator that they never saw Hubbard do or say anything inappropriate in response.

Hubbard arrested Mbano for disorderly conduct in violation of Florida Statute Section 877.03, escorted him to a patrol car, and drove him to the Pinellas County Jail.

In his interview with internal affairs, Mbano denied that he ever used profanity, racial slurs, or making any threats during his encounters with Hubbard. (Id. at 2). He reiterates the claim in his motion for summary judgment. He further argues in the motion that the city has a custom or policy of falsely arresting homeless people and using excessive force to do so. In support of this position, the motion includes three attachments (in addition to the internal affairs report): (1) a consultant's report prepared for the City of St.

Petersburg on the general state of homelessness in the city; (2) what appears to be a short article or press release announcing the city's commission of this report; and (3) a copy of an article from the *St. Petersburg Times* in which the county public defender protests what he believes to be excessive arrests of the city's homeless population.

## DISCUSSION

Now the parties move for summary judgment on all counts, which, after a motion to dismiss that the Court partially granted, are the following: (1) a state law claim against the city for false arrest; (2) a federal claim against the city, under 42 U.S.C. § 1983, for false arrest; and (3) a federal claim against the city, also a 1983 action, for use of excessive force. But, as discussed below, the evidence in this case could not convince a reasonable juror to return a verdict in Mbano's favor on any of the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Accordingly, Defendant is entitled to summary judgment.

## Summary Judgement Standard

A motion for summary judgment forces a court to "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual

disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248 (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To carry this burden, the moving party can present evidence to this effect or instead show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.* at 322-23.

If the moving party meets its burden, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248-49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.

Ct. 1575, 20 L. Ed. 2d 569 (1968) (requiring that "sufficient evidence supporting the claimed factual dispute be shown to [defeat the motion and] require a jury or judge to resolve the parties' differing versions of the truth")).

A court ruling on a motion for summary judgment must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson,* 477 U.S. at 255. After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

**Plaintiff's State Law False Arrest Claim**

Mbano's claims are against the city. Florida law permits a plaintiff to recover against a municipality on a theory of vicarious liability. *See* Fla. Stat. § 768.28; *Laster v. City of Tampa Police Dept.*, 575 Fed. App'x. 869, 872 (11th Cir. 2014) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 n. 18 (11th Cir. 1988)). And Florida law recognizes liability for false arrest by a law enforcement officer. *Lester v. City of Tavares*, 603 So. 2d 18, 19 (Fla. 5th DCA 1992) (internal citations omitted).

False arrest is defined in Florida as "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson*, 19 So. 2d at 699). For law enforcement personnel, this standard equates to an arrest in which "the officer does not have probable cause to believe [the suspect] has committed an offense." *Lester*, 603 So. 2d at 19.

On a motion for summary judgment, the standard's corollary also applies: the existence of probable cause defeats a claim for false arrest. *Fernander v. Bonis*, 947 So. 2d

584, 588 (Fla. 4th DCA 2007). Probable cause exists "when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charge." *Id.* (citing *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004)). What facts and circumstances constitute probable cause is a question of law. *Mailly*, 867 So. 2d at 1252.

Here, the facts and circumstances gave Hubbard probable cause to arrest Mbano. Disorderly conduct occurs when someone "commits such acts . . . of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them. . . ." Fla. Stat. § 877.03. In his affidavit, Hubbard testified that, upon being notified that he could not loiter on the St. Vincent DePaul steps, Mbano yelled and cursed at him with racially charged rhetoric. Hubbard further testified that this behavior occurred in the early morning in front of approximately thirty people. Backup officers Feeley and Miranda corroborated this description of events. And so did St. Vincent DePaul employee Hunt. These facts could have convinced a reasonable police officer that the law justified an arrest. *See Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471, 474 (Fla. 1st DCA 1996) ("[I]t is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged.").

Mbano does not adequately rebut these facts to overcome summary judgment. Although Mbano, in his report to police, generally denied "using any profanity or making any racial slurs or making any threats during [his] encounter with Officer Hubbard," this claim is insufficient for a few reasons. First, it incorrectly presupposes that, without threats and profanity and racial slurs, Mbano could not have still been committing disorderly

conduct. *See* Fla. Stat. § 877.03; *Epstein v. Toys-R-Us Delaware, Inc.*, 277 F. Supp. 2d 1266, 1273 (S.D. Fla. 2014) (concluding that officer had probable cause to arrest plaintiff after plaintiff refused to accept the store's return policy, reprimanded employees, and ignored officer's requests to move). And second, the claim is undermined by the same internal affairs report that Mbano relies on: while being booked at the jail, a camera catches Mbano telling Hubbard, unprovoked, "Go fuck yourself." (Dkt. 35-3, p. 2).[1]

In short, while Mbano does dispute the facts on which Hubbard's probable cause determination was based, his dispute is not supported by significantly probative evidence. *See Anderson*, 477 U.S. at 248. In other words, Mbano's dispute on the issue of whether probable cause to arrest him is not a genuine one. *See id.* Summary judgment on his state law claim for false arrest will be granted.

**Plaintiff's Federal Claims**

In federal 1983 actions, municipalities cannot be held vicariously liable for injuries caused by their employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail against a city on such a claim, a plaintiff must prove (1) that a city employee violated one of plaintiff's constitutional rights, and (2) that a city policy or custom, which amounted to deliberate indifference to the right at issue,

---

[1] Moreover, though Mbano submitted the internal affairs report in support of his Response in Opposition/Motion for Summary Judgment (Dkt. 35), he does not swear to any of the facts contained in it. The Court must consider this fact when determining whether a genuine issue of material fact is raised. *See Anderson*, 477 U.S. at 248.

caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Here, Mbano cannot establish that one of his federal constitutional rights was violated. His claim must fail on that ground alone.

### False Arrest

Under federal law, a false arrest is "a warrantless arrest without probable cause." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). As it is under Florida law, probable cause defeats the claim. *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). And in the Eleventh Circuit, "the standard for determining the existence of probable cause is the same under both Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1434 (11th Cir. 1998).

The Court has already concluded that Mbano's state law claim for false arrest must fail because Hubbard had probable cause to arrest him for disorderly conduct. For the very same reason, Mbano's federal false arrest claim must also fail. Summary judgment on this claim will be granted to Defendant.

### Use of Excessive Force

Mbano's complaint alleges that, during his arrest on April 18, 2014, Hubbard "harassed [him] and threatened [him] with imprisonment and physical harm. . . ." (Dkt. 2, p. 10). The complaint further alleges that Hubbard pulled Mbano up from a seated position and forced him down, face first, on the hot hood of a still-running patrol car. (Id.)

Even if the Court assumes that these allegations state a claim for use of excessive force, no proof backs the allegations. Without it, summary judgment is appropriate.

Mbano's motion cites the city's police internal affairs report. (Dkt. 35-3). The report summarizes an interview the investigator had with Mbano, and in it, Mbano complained of "harassment, and threats by Officer Hubbard," but never the use of physical force. (Id. at 1-2). Indeed, the same report contains the accounts of other eyewitnesses, St. Vincent DePaul employee Hart and backup Officers Feeley and Miranda, who all reported that they never saw Hubbard do or say anything inappropriate during the arrest of Mbano.

Summary judgment should be granted in favor of a defendant when there is an absence of evidence needed to support the plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Mbano's allegations of excessive force were sufficient to overcome a motion to dismiss, as they did in this case. But the proof does not support the allegations, and no reasonable juror could conclude that it does. *See Celotex Corp.*, 477 U.S. at 322-23. Summary judgment on this final claim is warranted as well.[2]

It is ORDERED AND ADJUDGED that:

1.      Defendant's Motion for Summary Judgment (Dkt. 33) is GRANTED.

2.      Plaintiff's Motion for Summary Judgment (Dkt. 35) is DENIED.

3.      The Clerk is directed to enter judgment in favor of Defendant.

---

[2] The Court also concludes that, even if Mbano had supplied sufficient evidence of false arrest and use of excessive force, his federal claims against the city would have still failed as a matter of law. To prevail on a federal 1983 against a municipality, a plaintiff must prove that his constitutional infringements were caused by a government custom, policy, or practice. *Monell*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). Mbano's proof on this element is likewise insufficient. *See Celotex Corp.*, 477 U.S. at 322-23. In fact, the conclusions in the city's commissioned report on the state of homelessness in St. Petersburg—and the fact that the city commissioned the report in the first place—undermine the claim.

4.      The Clerk is further directed to close this case and terminate all pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of February, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record